### ATCHISON, T. & S. F. RY. CO. et al. v. UNITED STATES ex rel. SONKEN–GALAMBA CORPORATION.

### No. 11062.

Circuit Court of Appeals, Eighth Circuit.

Aug. 1, 1938.

Dean Wood, of Kansas City, Mo. (Cyrus Crane, George J. Mersereau and John N. Monteith, all of Kansas City, Mo., and Charles H. Woods and Mr. Thomas F. King, both of Chicago, Ill., on the brief), for appellants.

Harry L. Jacobs, of Kansas City, Mo. (Bernard L. Glover, I. J. Ringolsky, William G. Boatright and Ringolsky, Boatright & Jacobs, all of Kansas City, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a mandamus proceeding authorized by. Section 49, Title 49 U.S.C.A., brought by the United States on relation of Sonken-Galamba Corporation against various Railroad Companies and various officers of the Western Weighing and Inspection Bureau. The Bureau is an unincorporated Company whose members are various Railroads and the Bureau's employees. The Bureau is the agent of the defendant Railroads and its services consist mainly in determining whether material tendered for transportation falls within the class which the shipper claims.

The object of the present proceeding is to compel the Railroads to receive and carry certain steel and iron plates at the rate asked for steel and iron scrap.

There is no dispute about the amounts of the two rates,—those on steel and iron plates and those on steel and iron scrap. The latter are much lower.

It appears that a great many of the oil tanks in Oklahoma and adjoining States

are being or have been dismantled and the plates which go to make up these tanks are or have been shipped in various directions by the dealers in scrap material.

Up to February, 1937, these plates, derived from dismantled tanks, have been shipped as steel and iron scrap; but in February, 1937, the Railroads, or some of them handling this material, on the advice of the Western Weighing and Inspection Bureau, refused to transport the material except as second-hand steel and iron plates and at the rate for such plates.

The real question involved, therefore, is whether the material so offered for shipment shall be received and shipped at the lower rate for scrap iron and steel, or at the higher rate as second-hand plates.

It is alleged in the petition for writ of mandamus that the refusal to accept and transport said material by the Railroads is founded solely on the wrongful and arbitrary inspection of the respondent Bureau and its employees.

The Court below granted the Writ compelling the Railroads to receive and transport this material as scrap iron and steel; and from the judgment so entered, the appeal is taken.

Two questions present themselves: (1) Whether in determining what the material tendered for transportation is, the jurisdiction of the Interstate Commerce Commission is exclusive; if not, then (2) was the material thus tendered scrap iron and scrap steel.

Appellee contends that resort to the Commission is necessary only where the tariff provision in question is not plain or clear, or where it is contended that the provision has a peculiar or special meaning other than the ordinary import of the words used, and where evidence must be heard to ascertain such special meaning of the provision.

For a discussion of the question: When is the jurisdiction of the Interstate Commerce Commission exclusive?—see Great Northern Railway Company v. Merchants' Elevator Company, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Standard Oil Company v. United States, 283 U.S. 235, 51 S.Ct. 429, 75 L.Ed. 999; Butler Motor Co. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 272 F. 683.

On the second question, the Interstate Commerce Commission has itself said, in defining scrap: "Rates on scrap iron or scrap steel apply only on pieces (separate or combined) of iron or steel having value for remelting purposes only."

And again, in Klotz Bros. v. Chesapeake & Ohio Ry. Co., 177 I.C.C. 557: "Scrap iron consists of old, worn-out, obsolete, broken, and cut iron or dismantled machinery, and parts thereof, entirely unfit for original use and having no commercial value except for remelting purposes."

The evidence is replete with statements that the material tendered for transportation was "old, worn-out, obsolete, broken, and cut iron or dismantled machinery, and parts thereof, entirely unfit for original use".

It is agreed by counsel that the material tendered had no commercial value except for remelting purposes.

It is admitted that a very small portion of the material was picked out and used, but it was less than one-half of one per cent and not entirely satisfactory.

Appellee contends that the value involved in the tariff provision in question means "recognized commercial value" for remelting purposes only; that the use to which the material may be put is not necessarily the test of whether it is scrap; that the uses other than for remelting purposes which are referred to in the evidence were isolated and inconsiderable and were not sufficient to create any "recognized commercial value" except for remelting purposes.

The trial Court has found adversely to the respondents both on the question of jurisdiction and on the question of whether the material was scrap. We are in agreement with the trial Court on both questions.

The action of the Bureau upon which the Railroad Companies relied is well and tersely put by Mr. Piehl, one of the members of the Bureau, as follows. It would seem, however, to be somewhat arbitrary: "It wouldn't affect my classification if I should find in my investigation that only a very small part of it could be used because there should be a demand for only a small part of it. I base my classification on the fact it is physically usable for something else than remelting, the material itself, regardless of how much or how little demand there may be for that purpose. As to your question as to whether I would make this classification regardless of how expensive or inexpensive the use would be, I say that rates are predicated on the article itself

and we must go by the article that is shipped, not the use to which it is actually put. Just so long as it was usable, I would make the classification regardless of whether it would be practicable or impracticable to use it for that purpose."

 Furthermore, we think that where the provision of the tariff is clear, it is to be construed like any other written instrument; and that where, as here, the only question of fact is as to the character of the material offered for transportation, the courts have original jurisdiction to try that issue of fact. See Great Northern Railway Company v. Merchants' Elevator Company, supra; Standard Oil Company v. United States, supra; Butler Motor Co. v. Atchison, T. & S. F. Ry. Co., supra.

The judgment should be affirmed.