**SONKEN–GALAMBA CORPORATION et al.
v. ATCHISON, T. & S. F. RY. CO.
et al.**

No. 124.

District Court, W. D. Missouri, W. D.
July 27, 1939.

I. J. Ringolsky, William G. Boatright, and Harry Jacobs, of the firm of Ringolsky, Boatright & Jacobs, all of Kansas City, Mo., for plaintiffs.

R. S. Outlaw, of Chicago, Ill., and Lathrop, Crane, Reynolds, Sawyer & Mersereau, George J. Mersereau, and Dean Wood, all of Kansas City, Mo., for defendant Atchison, T. & S. F. Ry. Co.

Cooper, Neel & Sutherland and Mr. Ellison A. Neel, all of Kansas City, Mo., and Carl S. Hoffman, of St. Louis, Mo., Hobert Price, of Dallas, Tex., and James T. Blair, of St. Louis, Mo., for defendants Missouri-Kansas-Texas R. Co. and Missouri-Kansas-Texas R. Co. of Texas.

T. D. Gresham, of Dallas, Tex., for defendant Texas & P. Ry. Co.

Lathrop, Crane, Reynolds, Sawyer & Mersereau, George J. Mersereau, and Dean Wood, all of Kansas City, Mo., for defendant Pennsylvania R. Co.

**OTIS, District Judge.**

This suit was instituted against six railroad companies and other defendants under Section 8 of Title 49, U.S.C., 49 U.S.C.A. § 8, to recover damages for the refusal of the carriers to transport at the scrap iron and scrap steel rate what the plaintiffs claim was scrap iron and scrap steel. After answers had been filed plaintiffs moved for summary judgment under Rule 56, 28 U.S.C.A. following section 723c, alleging that whether the material involved in this suit should be carried at the scrap iron and scrap steel rate had been adjudicated in various mandamus proceedings authorized by Section 49 of Title 49, U.S.C., 49 U.S.C.A. § 49.[1] The contention of plaintiffs is that they are entitled to a summary judgment on the issue of liability and that only the question of the amount of damages remains to be tried. Some of the defendants also have moved for a summary judgment that plaintiffs are not entitled to recover certain elements of the damages sought.

### Considered as to One Defendant

In the beginning we shall consider plaintiffs' motion for a summary judgment and limitation of issues as if the only defendant were the first named in the caption, The Atchison, Topeka & Santa Fe Railway Company. The chief argument submitted in support of the motion is this: One of the plaintiffs brought a mandamus suit against the Company to compel it to transport at scrap iron and scrap steel rates certain quantities of metal which had been tendered for shipment. A writ of mandamus was awarded. D.C., 21 F.Supp. 931, affirmed 8 Cir., 98 F.2d 457. Not only was it adjudicated in the mandamus suit that the particular metal tendered was scrap iron and scrap steel and that it must be carried at the scrap iron and scrap steel rate, but also, so it is urged, it was in effect adjudicated between the parties that all similar metal which thereafter might be tendered by this particular shipper to the Company was scrap iron and scrap steel. The material for refusal to transport which at the scrap iron and scrap steel rate damages are now sought is similar, it is said, to that involved in the man-

---

[1] Three mandamus proceedings are referred to. One was filed March 17, 1937, by the plaintiff Sonken-Galamba Corporation against certain carriers in the District Court of the United States for the Northern District of Texas. A writ of mandamus was granted by the district judge and the judgment was affirmed by the Fifth Circuit Court of Appeals. See Texas & Pacific Railway Company v. Sonken-Galamba Corporation, 5 Cir., 100 F.2d 158. The second mandamus proceeding referred to was instituted by the plaintiff Sonken-Galamba Corporation against the Kansas City Southern Railway Company (not a party to the present proceeding) in the District Court of the United States for the Western District of Missouri. Plaintiff was awarded a writ of mandamus and the judgment was not appealed. The third mandamus proceeding was instituted April 28, 1937, in the United States District Court for the Western District of Missouri by the plaintiff Sonken-Galamba Corporation against several of the common carriers who are defendants in the present proceeding. The plaintiff was awarded a peremptory writ of mandamus. United States ex rel. Sonken-Galamba Corp. v. Missouri-Kansas-Texas R. Co. et al., D. C., 21 F.Supp. 931. The judgment of the district court was affirmed by the Eighth Circuit Court of Appeals. Atchison, T. & S. F. R. Co. v. United States ex rel. Sonken-Galamba Corp., 98 F.2d 457.

damus suit. The Company is bound by the former judgment. It is not entitled, so it is contended, to be heard on the issue: Is the material involved in the present suit scrap iron or scrap steel? The plaintiffs are entitled, such is the conclusion, to a summary judgment that the material involved is scrap iron or scrap steel and that it was the Company's duty to carry it at the scrap iron or scrap steel rate.

We must confess that when first we heard this argument we would not have been impressed with it except for our high regard for the ability of counsel presenting it. Careful consideration has led us to the definite conclusion the argument is not sound.

■ 1. If we assume that it was determined in the mandamus suit that all material similar to that immediately involved in that suit is scrap iron or scrap steel, still the plaintiff in the mandamus suit is not entitled to a summary judgment in the present suit until it is shown that there is "no genuine issue"[2] but that the material involved in this suit is similar to what was involved in the mandamus suit (that is, similar in those points on account of which the material involved in the mandamus suit was ruled to be scrap iron or scrap steel). And certainly one conglomerate of pieces of metal is not similar to another conglomerate within the meaning of the word as we are now using it because both come from the same territory or because both formerly were put to the same character of use (e. g., as walls of oil tanks). The scrap iron or scrap steel rate applies only to "pieces of iron or steel having value for remelting purposes only." See 98 F.2d 457. One piece of iron or steel is similar to another only if it has the same essential characteristics on account of which the other piece was determined to have value for remelting purposes only.

Is there any admission in the answer of The Atchison, Topeka & Santa Fe Railway Company or elsewhere that what is involved in the present suit is material similar to that involved in the mandamus proceeding? We cannot intelligently seek for the answer to that question until we ascertain what description was given in the mandamus proceeding of the material there involved. The plaintiffs' petition in the mandamus proceeding fully described the material. It was alleged in the petition that that material was "made up of pieces of old steel plates of different dimensions, being parts of worn-out, abandoned, obsolete, condemned, dismantled oil storage tanks; these plates consisting of rusted, corroded, deteriorated pieces varying in size from 2 to 5 feet in width and from 15 to 20 feet in length, all without rivets, angle bars or other attachments."

It was further alleged that "said steel pieces are not in their original form." And that "the rivet heads (originally) holding the pieces together are cut off, the rivets driven out and the pieces pried and hammered loose and allowed to fall on the ground, many of them being thus bent and damaged; the rivet-holes in the four edges of the sheets are cut and expanded, the edges bent and hammered." And that "said pieces have been subjected to the corrosive effect of the elements and * * * crude oil * * * and are now in a corroded and rusty condition and covered with oil and other substances."

These allegations in the petition for mandamus the Railway Company in its answer thereto expressly and fully denied. The issue thus made was resolved in favor of the plaintiff in the court's finding of fact No. 2 and it was further found as a fact (the court's finding of fact No. 5) "That the material in question is not in the original form and is in fragments and pieces, and that same is not usable, even for the purposes claimed by respondents, without alteration and refabrication."

■ We have found in the record now presented no admission made by the Railway Company that the material involved in the present suit is similar in any of the characteristics mentioned to the material involved in the mandamus suit, as those characteristics were described by the plaintiff in that suit and found by the court. So, even if it had been adjudged in the mandamus proceeding that the Railway Company must transport as scrap iron and scrap steel all material similar to that immediately involved, certainly the plaintiffs must prove, absent an admission, that the material involved in the present suit is similar to that material. As to that issue the Railway Company certainly is entitled

[2] Rule 56 provides that a summary judgment is to be rendered "if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that * * * there is no genuine issue * * *."

to the judgment of the trier of fact after a full trial.

## What Was Really Adjudged

■ 2. But we are constrained to believe that learned counsel for plaintiffs have given the issues in the mandamus proceeding and the judgment therein an interpretation altogether too broad. It was not the judgment of the court that The Railway Company should transport material similar to that immediately before the court as scrap iron or scrap steel, but that it should transport a particular aggregation (22,000 tons) "of pieces torn from old, obsolete, abandoned, dismantled oil storage tanks * * * the material described in * * * petition and the evidence." Not only was there not in the judgment any express command to The Railway Company touching similar material, but no such command was implied.

■ Of course the judgment in the mandamus proceeding could not be broader and never was intended to be broader than the law upon which it was bottomed. The law was that the scrap iron or scrap steel rate should apply "only on pieces (separate or combined) of iron or steel having value for remelting purposes only." Obviously whether any given piece of iron or steel has value "for remelting purposes only" depends upon its qualities and characteristics. And its qualities and characteristics must be ascertained by examination. That examination in the first instance is made by the shipper, who determines whether he believes the piece of iron or steel offered for shipment has value "for remelting purposes only." The second examination is made by the carrier, which determines whether the piece has value "for remelting purposes only." Perhaps the shipper and carrier do not agree. The controversy may be submitted to the Interstate Commerce Commission. In that event the Commission will determine from examination whether the piece of iron or steel has "value for remelting purposes only." The controversy may be submitted to a court. In that event the court will determine whether the piece has "value for remelting purposes only." The jurisdiction of the court will be limited to the discharge of that judicial function. Certainly the court will not legislate. Compare Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L. Ed. 150. The court will not say to the parties before it: "Hereafter when this shipper submits to this carrier a piece of iron and steel and claims it has value for remelting purposes only, the carrier will not test it by the legislative standard— Does it have value for remelting purposes only?—but by this new standard: Is the piece similar to some other piece?; or by this other new standard: Was the piece taken from a disused, obsolete, oil tank?"

In the mandamus proceeding the issue was: Do the pieces of iron and steel which were tendered for shipment have "value for remelting purposes only." The judgment could not be broader than the issue. The judgment necessarily referred to particular pieces. The judgment was not: a piece of steel taken from an oil tank, which is bent, whose rivet holes have been torn out, which has undergone internal chemical change from corrosion, electrolysis, and exposure to destructive fluids, is of "value for remelting purposes only" and must be carried at the scrap iron and scrap steel rate.

## Judgment as to W. W. & I. Bureau

■ We do not overlook the fact that in the mandamus proceeding it was not only adjudged that The Railway Company (and other railway companies) should carry the particular aggregation of pieces tendered for shipment at the scrap iron and steel rate, but also that "* * * Western Weighing & Inspection Bureau * * * shall * * * hence forth discontinue, close and desist from classifying the material hereinbefore referred to and material of the same class and similar thereto that may hereafter be tendered for shipment by relator as being anything other than iron or steel having value for remelting purposes only, * * *"

We do not overlook the fact that it was adjudged that the Western Weighing & Inspection Bureau was an agent of The Railway Company (and other railway companies). It is our view, however, that the only duty the law imposed—hence the only duty the court had jurisdiction to enforce by mandamus—was that railway companies should transport commodities tendered for transportation at the lawful rates. No law directed agents of railway companies to classify commodities, even when tendered for shipment, as taking any certain rate; certainly no law directed agents of railway companies to classify commodities at any certain rate when at some time in the future such commodities might be tendered.

## Cases Cited

3. What we have thus far said seems to us to be reasonable, but too often we have discovered that what seemed to us reasonable has not seemed reasonable to courts whose decisions we are bound to follow. On that account we have been especially careful to consider the decisions cited by counsel for plaintiffs to support their contention that the judgment in the mandamus case governs all similar material tendered to The Railway Company for transportation. Five cases were cited: Johnson Steel Street-Rail Company v. William Wharton, Jr., & Co., 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429; New Orleans v. Citizens Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Southern Minnesota Railway Extension Company v. St. Paul & S. C. R. Co. et al., 8 Cir., 55 F. 690; and New York Life Insurance Company v. Graham, 9 Cir., 92 F.2d 377.

It was held in Johnson Steel Street-Rail Company v. William Wharton, Jr., & Co. that a judgment that guard rails manufactured by Wharton in a certain year according to certain given specifications violated patent rights owned by Johnson was res adjudicata of the issue whether guard rails manufactured by Wharton according to the same specifications in a succeeding year violated the same patent. The Supreme Court said that the "precise question" was presented in both cases. It was held in New Orleans v. Citizens Bank that an adjudication that the Citizens Bank was under the law exempt from a certain tax in a given year was res adjudicata of its claim to exemption from exactly the same tax imposed under the same law in the next succeeding year. It was held in Southern Pacific Railroad Co. v. United States that the adjudication between the Southern Pacific and the United States in litigation involving the title to certain lands that a given map was a map "of definite location" was res adjudicata that the same map was a map "of definite location" in subsequent litigation involving lands falling within the limits set out in that map. It was held in Southern Minnesota Railway, etc., Co. v. St. Paul, etc., R. Co. that an adjudication between parties touching the title to certain lands was res adjudicata as to identical issues of fact in subsequent litigation between the same parties touching other lands held by exactly the same title. It was held in New York Life Insurance Company v. Graham that an adjudication between a beneficiary under a policy of insurance and the insurance company that the insured died from accident was res adjudicata as to exactly the same issue in a subsequent suit between the same parties to recover under a different policy of insurance.

Obviously all that any one of these cases does is to illustrate the general rule of res adjudicata.[3] As the Eighth Circuit Court of Appeals put in the Southern Minnesota Railway, etc., Company case, supra [55 F. 695]—" * * * when an issue of fact, or a mixed question of law and fact, on which the decision of a case depends, has been tried and determined, the parties to such trial will be estopped, even in a second suit on a different cause of action, where the same issue or question arises, from contending to the contrary of what was thus found and determined."

So if any material issue of fact was decided in the mandamus case that same issue of fact may not be relitigated in a new suit between the same parties, just as the issue of fact referred to in New York Life Ins. Co. v. Graham—did the insured die from accident?—could not be relitigated in a second suit between the same parties on a different policy. But the only material issue of fact or mixed issue of fact involved in the mandamus suit was whether what was tendered for shipment were pieces of iron and steel of value only for remelting purposes. That same issue is not involved in the present suit. And no one of the cases cited announces the doctrine that a decision of an issue of fact in one case is res adjudicata of a merely similar issue in a later case. The issue must be identical. And of course a decision of an issue of law in one case (as that the phrase—"having value for remelting purposes only"—means—having no recognized commercial value other than for remelting) is not res adjudicata of that issue of law in a later case, however great may be its significance as a precedent.

We think it is quite suggestive that learned counsel have found no case supporting their theory more closely related to the present case in its facts than those

---

[3] We have deemed it unnecessary in this opinion to distinguish between res adjudicata and estoppel by judgment.

cited. There have been hundreds, perhaps thousands, of cases involving freight undercharges and overcharges. Each one of these cases concerned what rate a particular shipment should pay, involved a determination as to what the commodity shipped was. So far as our research has revealed it has never been so much as contended that a judgment in one of these cases was res adjudicata in a subsequent case between the same parties involving a shipment of an allegedly similar commodity. We must conclude that the opinion of the bar has been against plaintiffs' theory.

Some of the material involved in the present suit may be identical with that involved in the mandamus suit. If that is true we do not wish to be understood as holding that the judgment in the mandamus suit that such material took the scrap iron and scrap steel rate is not conclusive in the present suit as between the same parties.

### Conclusion as to Plaintiffs' Motion

4. Our conclusion is that plaintiffs are not entitled to a summary judgment as against The Atchison, Topeka & Santa Fe Railway Company. For the same reasons we think plaintiffs are not entitled to a summary judgment against any of the defendants. Nor do we think we are justified now in saying that any material fact nominally in controversy under the pleadings is not genuinely in controversy.

### Defendants' Motions

5. The defendant Atchison, Topeka & Santa Fe Railway Company on its part moves for judgment (and so also do other defendants) as to certain subdivisions of plaintiffs' prayer for damages. In one respect we believe the motion is well taken. The case is not now sufficiently developed to warrant summary judgment as to other subdivisions of plaintiffs' prayer.

Plaintiffs seek to recover as damages from The Atchison, Topeka & Santa Fe Railway Company the amount of the attorney's fee for which the plaintiffs, or one of them, became liable or paid in the mandamus proceeding to which the Atchison, Topeka & Santa Fe was a party. The contention of the Railway Company is that that is no proper element of damages in the present suit. The contention of the Company is right.

In the statute upon which this suit is brought, Section 8 of Title 49, U.S.C.,

49 U.S.C.A. § 8, it is declared that the liability of a common carrier for its refusal to carry freight at the lawful rate shall be "for the full amount of damages sustained in consequence of any such violation" of its duty under the law, "together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." The express provision for the recovery of an attorney's fee in the suit for damages was necessary if such an attorney's fee is to be recovered, for the general rule is that an attorney's fee is not recoverable. The mere fact that Congress deemed it necessary to make special provision for the recovery of an attorney's fee in the suit for damages authorized by Congress strongly suggests that it was not intended by Congress that other attorney's fees expended in merely incidental litigation should be recovered as damages. The statute provides that the injured party may recover "the full amount of damages sustained." But the phrase "full amount" adds nothing to the significance of the statute, only "damages known to the law" are recoverable. Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 204, 33 S.Ct. 893, 57 L.Ed. 1446, Ann. Cas.1915A, 315. The real reason why, when a common carrier has refused to carry a given shipment of freight at the lawful rates and when the shipper has compelled its carriage by a proceeding in mandamus and has hired a lawyer to institute and carry through that proceeding and has thereafter brought an action for damages for the refusal of the carrier to transport the shipment at the lawful rate, the real reason why the shipper cannot recover the attorney's fee expended in the mandamus proceeding is this: the payment of the attorney's fee was not a damage directly caused by the refusal of the carrier to transport the shipment at the lawful rate (and the same is true as to other expenses incurred in connection with the mandamus proceeding). One must hire a lawyer to prosecute any case for damages but the cost of the lawyer never is regarded in the law as an element of recoverable damages absent some express statutory provision. We do not laboriously develop the thesis since learned counsel for plaintiffs at the oral argument almost conceded it by conceding it was debatable (and that is not his habit unless he knows the ground under his feet is very insubstantial).

462

The motion of The Atchison, Topeka & Santa Fe Railway Company to the extent that it refers to plaintiffs' claim and prayer for damages set out in paragraphs (a), (b), (c), (d) and (e) of Part 18 of plaintiffs' petition and asks the elimination of those paragraphs should be sustained. Like motions of other defendants should be sustained to the same extent.

### Order on Plaintiffs' Motion

The motion of plaintiffs for summary judgment and limitation of issues, having been duly considered by the Court and the Court being fully advised in the premises, is by the Court overruled. Plaintiffs are allowed an exception. So ordered.

### Order on Defendants' Motions

The motions of the several defendants for summary judgment as to portions of plaintiffs' prayer for damages, having been duly considered by the Court and the Court being fully advised in the premises, are sustained in so far as the motions refer to paragraphs (a), (b), (c), (d), and (e) of Part 18 of plaintiffs' petition. Said paragraphs are stricken from plaintiffs' petition. Plaintiffs are allowed an exception. In all other respects the motions of defendants are overruled. Defendants are allowed exceptions. So ordered.