CRANCER et al. v. LOWDEN et al.

No. 11859.

Circuit Court of Appeals, Eighth Circuit.

June 30, 1941.

Irl B. Rosenblum, of St. Louis, Mo. (Bernard Mellitz and Clyde W. Wagner, both of St. Louis, Mo., on the brief), for appellants.

Hale Houts, of Kansas City, Mo. (William O. Reeder, of St. Louis, Mo., and William S. Hogsett, of Kansas City, Mo., on the brief), for appellees.

Before GARDNER and JOHNSEN, Circuit Judges, and COLLET, District Judge.

COLLET, District Judge.

This appeal is from a judgment in favor of the trustees of the Chicago, Rock Island and Pacific Railroad Company, and against appellants Lester A. Crancer and George B. Fleischman, co-partners doing business under the firm names of Valley Steel Products Company and the Mid-Valley Steel Company respectively, for shipping charges on steel pipe thread protectors. The case was tried without a jury. At the conclusion of the trial the Court made findings of fact and stated conclusions of law, in writing, and entered judgment in favor of appellees for the sum of $2,263.47.

The present controversy involves the proper classification of the commodity under the existing tariffs. The shipments, seven carloads, moved from points in Montana, Texas, California and Louisiana where appellants had billed the cars to themselves at St. Louis, Missouri. The billings classified the contents of the cars as "scrap iron" and the tariff charge applicable to that classification was paid. When the shipments arrived at St. Louis, appellees' rate clerk requested the Western Weighing and Inspection Bureau to inspect the contents of the cars. That inspection resulted in a rating of the shipments as pipe fittings. The classification "pipe fittings" included thread or pipe protector rings. The tariff rate on scrap iron being less than the rate on pipe thread protector rings, demand was made upon appellants for the difference on the tariff. Refusal to comply with that demand resulted in this action.

The grounds upon which appellants seek a reversal are:

1. That the greater weight of the evidence failed to show that the shipments were other than scrap iron having a market or commercial value for remelting purposes only.

2. "That the Court erred in rendering judgment in favor of plaintiffs and against the defendants for additional freight charges on the articles shipped in that said judgment was based upon the use to which said articles were put by the defendants after they had received them from the railroad carriers."

3. That improper evidence of the market value of the pipe protectors was received.

4. That the Court improperly admitted in evidence an opinion of the Interstate Commerce Commission.

5. That the Court should not have proceeded with the trial until a complaint case pending before the Interstate Commerce Commission was determined.

Those questions will be considered in the order stated.

The commodity in question, referred to in various terms such as "pipe protectors", "pipe fittings", "pipe thread protectors", "protecting rings", were found by the trial court to be used "iron pipe thread protecting rings". These articles are used to protect the threads and the ends of pipe from injury in handling or shipment. Appellants are engaged in the business of purchasing the used articles, repairing and reselling them. All of the shipments were of the used articles which were being sent to appellants' plant at St. Louis. The repairing or reconditioning process consisted in a general way in a patented process of straightening those which were not too badly damaged and refinishing the threads. The remainder were useless except for remelting. One of the appellants, testifying on direct examination, indicated that approximately ninety per cent of the articles contained in these shipments could possibly be repaired for use. On cross-examination he stated that approximately sixty per cent were repaired and the remaining forty per cent discarded for remelting. There was other evidence to the same effect. The articles were shipped in open coal cars. The good and bad were commingled, were loose in the cars, and none were bound or tied together in any way. The tariff contained a provision that when a number of different articles were commingled in a car all should take the rating of the highest classed or rated article in the car.[1] The re-classification was based upon the following item of the tariff: "Pipe Fittings:—rings, thread protecting, iron, in packages." Appellants' proof tended to show that the thread protecting rings were made of steel. It is their contention that therefore the commodity did not fall within the classification of "iron" pipe thread protecting rings. Numerous metal objects were elsewhere classified under the heading "Iron or Steel."

That heading does not appear above the item "Pipe Fittings" quoted above. There is, however, a tariff provision as follows: "Unless the contrary appears, the word 'iron' wherever used in this classification includes, also, steel; and vice-versa." Another provision of the tariff provided for a ten per cent penalty for shipment of articles such as these loose or uncrated and not in packages. There was no difference in tariff rates on new and on used pipe protecting rings.

The classification relating to scrap iron provided that it should apply only to iron or steel having value for remelting purposes only.[2] At another place in the tariff scrap iron is referred to as follows:

"Iron or Steel.—

Scrap, not copper clad, see Note 9: In packages, or in pieces weighing each 50 lbs. or over, loose, L.C.L.

C.L. min. wt. 40,000 lbs., Rule 24 not to apply

Note 9—Ratings apply on scraps or pieces having value for re-melting purposes only."

As heretofore noted the shipments here involved were not in packages. Neither did the articles weigh 50 pounds or over.

The trial court found that the shipments were not of scrap iron or steel possessing value only for remelting purposes, but were of used "iron pipe thread protecting rings". This finding is assailed upon several grounds.

■ The contention that the articles were steel and not iron is answered by the tariff provision heretofore quoted providing that unless the contrary appears the word "iron" will include "steel" and vice versa. It is argued that the contrary is made to appear by the fact that numerous other metal objects are classified under the heading "Iron or Steel", which does not appear above the item "Pipe Fittings" and that therefore the use of the word "Steel" in some instances and its absence in the item

---

[1] "Except as otherwise provided, when a number of different articles, for which ratings or rates are provided when in straight carloads, are shipped at one time by one consignor to one consignee and destination, in a mixed carload, they will be charged at the straight carload rate (not mixed carload rate) applicable to the highest classed or rated article contained in such mixed carload and the carload minimum weight will be the highest provided for any article in the carload."

[2] "Scrap Iron, Scrap Steel, Borings, Filings or Screenings (Iron or Steel), Minimum Weight 50,000 pounds, also Minimum Weight 75,000 pounds. Stopover privileges to finish loading or partly unload do not apply in connection with the rating here named. Ratings on scrap iron or scrap steel apply only on pieces (separate or combined) of iron or steel having value for remelting purposes only."

"Pipe Fittings" indicates that steel articles should not be included in the latter item.

The doctrine expressio unius est exclusio alterius is not one of universal application, but is to be applied only as an aid in arriving at intention and should not be followed to the extent of overriding a different intent. Bland v. Commissioner of Internal Revenue, 7 Cir., 102 F.2d 157; United States v. Barnes, 222 U.S. 513, 32 S.Ct. 117, 56 L.Ed. 291. The intent is reasonably clear that the word iron included articles made of steel.

The argument is advanced that the finding should be set aside because there was no proof that the articles had a market or commercial value for any purpose other than for remelting. Appellants' evidence showed that these seven and a great many more carloads of pipe thread protectors were purchased by them for reconditioning purposes. There was substantial evidence that a fairly well established price existed for used pipe thread protectors in the territory where they were available. The finding was not clearly erroneous and hence it may not be set aside. Rule 52 (a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409.

It is further contended that the finding that the pipe thread protectors did not possess a commercial or market value for remelting purposes only was based solely upon testimony that appellants purchased the articles for reconditioning purposes and not for remelting purposes. Obviously, if the articles were scrap iron fit for remelting purposes only, their purchase by appellants for another purpose would not change the character of the articles. Nor should one rate be applied to the shipment of an article to be used for one purpose and another rate be applied to the shipment of the same article when it is to be used for another purpose. Interstate Commerce Commission v. Baltimore & O. Ry. Co., 225 U.S. 326, 32 S.Ct. 742, 56 L.Ed. 1107, Ann.Cas.1914A, 504. But evidence of the use for which the articles were purchased and the use to which they were actually put was properly considered in determining what they actually were. In addition to the evidence showing the purpose for which appellants purchased the articles and the use to which they were put, there is an abundance of testimony to the effect that the articles were used pipe thread protectors, having an established market value

as such, as distinguished from mere scrap iron. If, as in Atchison, T. & S. F. R. Co. et al. v. United States ex rel. Sonken-Galamba Corp., 8 Cir., 98 F.2d 457, it had been conceded that the articles had no commercial value except for remelting purposes, or, as in I. C. C. v. Baltimore & O. R. Co., supra, the character of the commodity was uncontroverted, the mere fact that appellants had inadvertently paid more for the articles than they were worth for remelting purposes or purchased them for reconditioning purposes when in fact the articles were actually only scrap iron having a value only for remelting purposes, would not change their conceded value or uncontroverted character. But such is not the present case. Here, both the value of the articles and their character were disputed issues. In fact the determination of those issues was of controlling importance. A preponderance of the evidence supports the finding of the trial court both as to the value of the articles and their character.

The evidence is uncontroverted that the major portion of each carload of the shipments involved were used pipe thread protecting rings and were shipped loose and commingled in the cars. As heretofore demonstrated the proof justified the classification of the major portion of each shipment as pipe fittings consisting of used iron pipe thread protecting rings and not as scrap iron having a value for remelting purposes only.

The tariff heretofore quoted in the margin provided that when articles were shipped in a mixed carload the classification applicable to the highest classed or rated article in the car should apply. The entire shipments were therefore properly classified as pipe fittings consisting of used iron pipe thread protecting rings, and the tariff applicable thereto was properly applied with a ten per cent penalty for shipment loose, uncrated and not in packages.

Appellants' contention that improper evidence of the market value of the pipe thread protectors was admitted is apparently directed to the admission of the testimony of the witness Perry as to the market value of used pipe thread protectors. It is now asserted that the witness was not qualified and should not have been permitted to testify on the subject of market value. The record discloses that there was no objection to the testimony, and that if there had been an objection to his qualification, it should have been overruled.

It is asserted that the trial court improperly admitted in evidence an opinion of the Interstate Commerce Commission. The opinion was reported in Crancer et al. v. Abilene & S. Ry. Co., 223 I.C.C. at page 375. The conclusion stated by the Commission is quoted in the margin.[3] The objection was: "* * * that it has absolutely no probative value in this case at all. It is not determinative of this case; it is not conclusive of this case. It is not even persuasive in this case."

Later the additional objection was made that the decision of the Interstate Commerce Commission was treated as being res adjudicata. As the quoted portion of the opinion indicates, the opinion dealt with a complaint made to the Interstate Commerce Commission by these appellants in 1937 concerning the reasonableness of the application of existing tariffs to used pipe thread protectors.

■ Since the case was tried without a jury, we can see no possible prejudice to appellants by the consideration of the opinion of the Commission by the Court as evidence, rather than by an examination of the same opinion in his library. There is no suggestion that the latter course would have been improper. The trial court did not treat the opinion as being res adjudicata.

There was no error in calling it to the Court's attention.

■ Appellants' last contention is that the Court should not have proceeded with this trial because there was pending at the time a proceeding before the Interstate Commerce Commission involving the reasonableness of the rates on used pipe thread protectors. The mere statement of the question suggests the answer. The reasonableness of the rates was not an issue in this case. The issue was one of classification and the application of the existing tariffs in accordance with what the facts disclosed the commodity actually was. "Until changed tariffs bind both carriers and shippers with the force of law." Lowden v. Simonds, etc., Grain Co., 306 U.S. 516, loc. cit. 520, 59 S.Ct. 612, loc. cit. 614, 83 L.Ed. 953. Even if, as indicated by counsel in oral argument, the Interstate

Commerce Commission determined that the existing rates prescribed on used pipe thread protectors was unreasonable, fixed another rate therefor, and granted reparation rights, this action does not fail. Lowden v. Simonds, etc., Grain Co., supra. There was no administrative problem involved, the determination of which is committed to the Interstate Commerce Commission, hence the case of General American Tank Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, and others of similar import, are inapplicable.

The cause having been considered on the merits appellees' motion to dismiss the appeal may be considered as overruled.

No error appearing the judgment is affirmed without prejudice to such rights as appellants may have or become entitled to for reparation.

---

[3] "We find that the scrap-iron rates collected on the shipments described were inapplicable; that the applicable rates were the class or commodity rates on pipe fittings, plus 10 per cent thereof when loaded loose or at random, and that the applicable rates are not shown to have been or to be unreasonable. The complaint will be dismissed." Crancer et al. v. Abilene & Southern Railway Co., 223 I.C.C. 375, modified in immaterial detail, 225 I.C.C. 319.