The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Plaintiff,

v.

The RESURRECTION MINING COMPANY, a corporation, Defendant.

Civ. A. No. 4436.

United States District Court
D. Colorado.

March 30, 1956.

T. R. Woodrow and H. M. Boyle, Denver, Colo., for plaintiff.

Pershing, Bosworth, Dick & Dawson, John W. Low, Denver, Colo., for defendant.

KNOUS, Chief Judge.

This is an action brought by the plaintiff, an interstate carrier by railroad, to recover an alleged balance due for freight transportation charges from the defendant pursuant to the provisions of the Interstate Commerce Commission Act, Title 49 U.S.C.A., and particularly sections 3(2) and 6(7) thereof.

The parties have stipulated that the case shall be determined upon an agreed statement of facts and briefs heretofore filed by them.

From the stipulation of facts it appears that California Bag and Metal Company consigned two carloads of secondhand landing mats from Portland, Oregon, to the defendant at Leadville, Colorado, via the line of the plaintiff and connecting carriers and that said shipment was delivered to and accepted by the defendant at Leadville, Colorado; that said landing mats were manufactured from iron and steel plate and when shipped, except for having been used and secondhand, were substantially in their original manufactured form. Plaintiff admits that it collected, at or before the time of delivery of said shipment, freight transportation charges with federal transportation tax, in the amount of $1,962.66, but contends that there remains due from the defendant under the actual tariff and scheduled transportation charges duly filed with the Interstate Commerce Commission, $4,694.31 freight charges and federal transportation tax; that defendant purchased the landing mats in question as surplus war material; that defendant intended to use said landing mats for cribbing in its mines at Leadville, Colo-

rado, and that the same were not satisfactory for such purposes, and that all or a portion of said mats were thereafter sold as scrap for the purpose of remelting and resmelting; that the affidavits of two dealers in the scrap metal business attached to the defendant's answer may be considered by the Court as evidence; and, finally, that the "determination of the issues in this case depend upon whether the landing mats, at the time same were shipped, were useful for their original purpose or whether the same were useful only for scrap or remelting or resmelting purposes."

The entire controversy hinges on whether or not the plaintiff's or the defendant's interpretation of the tariff provisions respectively relied upon, is correct; if the plaintiff's contentions are correct, then the defendant owes the balance of $4,694.31; if defendant's contentions are correct, then the defendant has paid the full sum due under the applicable tariffs.

The plaintiff alleges the proper classification to be Item 25207, Consolidated Freight Classification Number 20, "Landing Mats, or runways, airfield, loose or in packages." On the other hand, the defendant alleges the material falls within the category of Item 25455, "Scrap, noibn, not copper clad, see Note 8, item 25456 (Rule 24 not to apply), loose (LCL, only if weighing each 50 lbs. or over), or in packages * * * Note 8. Ratings apply on scraps or pieces having value for remelting purposes only."

The law is very clear that the provisions of the tariff may not be varied by contract. The rates therein promulgated are binding upon both parties. Mistake or misunderstanding is of no effect. The cases supporting these principles are legion. A reference to Note 1 of 49 U.S.C.A. § 6(7), at page 284, where perhaps one hundred citations are set forth, suffices.

But it is also well established that the burden of proving an undercharge rests upon the carrier, Sonken-Galamba Corporation v. Union Pac. R. Co., 10 Cir., 1944, 145 F.2d 808, wherein at page 812 it is said:

"The shipments in question were accepted by the carrier as scrap iron, and freight rates were assessed and collected accordingly. The burden is therefore upon the carrier to show that at the time the material was shipped, it had a recognized commercial value for purposes other than remelting."

The plaintiff first relies upon the fact that the defendant's original intention was to use the landing mats as mine cribbing. However, it cites, with admirable frankness, the Sonken-Galamba case, supra, where the Court says again at page 812 of 145 F.2d:

"From the foregoing analysis of the adjudicated cases, it is made plain that the nature and character of each shipment at the time tendered determines its status for rate purposes, and the use which may be subsequently made of the material does not control the question whether the shipment has a recognized commercial value save for remelting purposes."

The plaintiff further cites Crancer v. Lowden, 8 Cir., 1941, 121 F.2d 645, 649, for the rule that "evidence of the use for which the articles were purchased and the use to which they were actually put was properly considered in determining what they actually were." Here there was an intent to use the landing mats as mine cribbing, but the fact is that they proved to be unsatisfactory for that purpose and all or a portion thereof were actually sold as scrap for the purpose of remelting. While some evidentiary value may be present where such an intent is carried out by use, the rule cannot be the same where the attempted use shows the fallacy of the intention, for the same opinion relied upon by plaintiff states at another place, that:

" * * * Obviously, if the articles were scrap iron fit for remelting purposes only, their purchase by

appellants for another purpose would not change the character of the articles."

■ The plaintiff next advances the contention that since paragraph 3 of the stipulation set forth that the "landing mats were substantially in their original manufactured form when shipped by defendant," the material cannot be considered as scrap, for articles to be considered as scrap must be "so reduced into fragments, scraps, or pieces as to be useless for any purpose other than remelting." In support of its position, plaintiff cites, among others, Vulcan Mold & Iron Co. v. Baltimore & Ohio R. Co., 1944, 259 I.C.C. 138; W. M. Smith & Company v. New Orleans & Northeastern R. Co., 1930, 163 I.C.C. 771; Lynchburg Iron & Metal Co. v. Seaboard Air Line R. Co., 1929, 160 I.C.C. 241.

Whatever might have been meant by the use of the word "substantially" in the above quoted phrase taken from the stipulation, is unnecessary for determination. It may be assumed that it did not import the landing mats to be in fragments, scraps, or pieces; as a matter of fact, it appears from the agreed statement that they were 10 feet long, 15 feet wide, and ⅛ of an inch thick, with 2½ inch holes throughout the plates. However, if an article shipped was useless for any purpose other than remelting, whatever its form, it would be a strange rule indeed to hold that the same article in fact had some other value simply because of its physical form. Only a useless act could support such a rule. *Lex neminem cogit ad vana seu inutilia peragenda.*

Such is made to appear clearly from what was said in United States ex rel. Sonken-Galamba Corp. v. Missouri-Kansas Texas R. Co., D.C.W.D.Mo.1937, 21 F.Supp. 931, 932, affirm Atchison, T. & S. F. R. Co. v. U. S. ex rel. Sonken-Galamba Corp., 8 Cir., 98 F.2d 457:

"It does not appear to be of consequence that such pieces of steel were large or that they were in any particular shape. The interpretation of the Interstate Commerce Commission did not contemplate that such pieces should be mutilated or bent or twisted in order to constitute scrap steel. The Interstate Commerce Commission in promulgating its rules did not require this. It did say, however, that such pieces, in whatever shape or form they might be, should have 'value for remelting purposes only.'"

In the absence of any affirmative proof that the landing mats at the time of shipment had a commercial value for purposes other than scrap, the Court is of the opinion that the facts as to the physical form of the mats cannot supply this proof, and in the absence of any other facts contained in the stipulation which would satisfy plaintiff's burden of proof, the decision must be that it has failed in this regard, and the issues determined in favor of the defendant.

■■ It is well in passing to note the two affidavits submitted for the defendant in which the affiants, dealers in scrap metal, deposed that at the time of their purchase by defendant, steel landing mats "had no major use other than as scrap for refining and smelting purposes." It is the predominant rather than the sporadic use which determines the character of the shipment. Sonken-Galamba Corp. v. Union Pac. R. Co., supra. The Court will not transgress from reasonableness into the field of semantics to find distinction between "predominant use" and "major use."

There is nothing in the record to refute these affidavits.

For the reasons given, the Court is satisfied that the plaintiff has failed to maintain the burden of proof imposed upon it in a case of this character.

Let the findings of fact and conclusions of law with the appropriate judgment in accordance herewith be drawn and submitted within ten days by counsel for the defendant. Each party to pay its own costs.