NORTHWESTERN AUTO PARTS CO., a corporation, Plaintiff,

v.

CHICAGO, BURLINGTON & QUINCY RAILROAD CO., a corporation, Defendant.

NORTHWESTERN AUTO PARTS CO., a corporation, Plaintiff,

v.

CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD CO., a corporation, Defendant.

NORTHWESTERN AUTO PARTS CO., a corporation, Plaintiff,

v.

GREAT NORTHERN RAILWAY CO., a corporation, Defendant.

NORTHWESTERN AUTO PARTS CO., a corporation, Plaintiff,

v.

The MINNEAPOLIS & ST. LOUIS RAILWAY CO., a corporation, Defendant.

Civ. Nos. 5027–5030.

United States District Court
D. Minnesota, Fourth Division.

April 12, 1956.

Sidney S. Feinberg, Robins, Davis & Lyons, Minneapolis, Minn., for plaintiff.

Harry S. Stearns, Jr., St. Paul, Minn., for defendant Chicago, B. & Q. R. Co.

R. W. Cronon, Edwin C. Matthias and Anthony Kane, St. Paul, Minn., for defendant Great Northern R. Co.

L. C. Corcoran, Minneapolis, Minn., for defendant M. & St. L. R. Co.

G. F. Bennett, Minneapolis, Minn., for defendant Chicago, M., St. P. & P. R. Co.

DEVITT, District Judge.

This is an action brought by a shipper against four railroads to recover alleged excessive freight rates paid. The facts have been stipulated. Defendants move for summary judgment.

Plaintiff is engaged in the business of acquiring, reconditioning, rebuilding and marketing used automotive parts. From October, 1953 to April 1954, plaintiff consigned and shipped to itself in Minneapolis, Minnesota, 28 carloads of obsolete vehicle parts which plaintiff had purchased from the United States Army as surplus. Plaintiff had obtained the material by bidding in competition with regular scrap iron and steel dealers. The shipments were delivered to plaintiff in Minneapolis by the four defendant railroads at various times between the dates mentioned.

The defendant railroads assessed and received from plaintiff freight charges applicable to the freight tariff rating for "auto parts and engine parts other than

auto bodies, having value for reconditioning."[1] Plaintiff contends that this freight rate is inapplicable to the material shipped and that the proper one is that lower rate which is applicable to "scrap iron or steel having value for remelting purposes only."[2] Plaintiff seeks to recover $22,913.53, representing the difference between the freight rate actually paid by it and the lower rate for scrap iron or steel.

■ This court has original jurisdiction of this kind of proceeding. 28 U.S.C.A. § 1337; 49 U.S.C.A. § 9; Atchison, T. & S. F. Ry. Co. v. United States ex rel. Sonken-Galamba Corp., 8 Cir., 1938, 98 F.2d 457.

■ There is no question presented here, nor can there be, as to the reasonableness of the rates charged. That is not within our province. 49 U.S.C.A. § 15(1); Terminal R. Ass'n of St. Louis v. United States, 1924, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150. The sole issue is as to the nature of the material shipped for rate purposes. This is the only issue the court is empowered to decide. See Sonken-Galamba Corp. v. Union Pac. R. Co., 10 Cir., 1944, 145 F.2d 808.

■ The principle governing this kind of case is adequately stated in Sonken-Galamba Corp. v. Union Pac. R. Co., supra, 145 F.2d at page 812:

"* * * It is * * * plain that the nature and character of each shipment at the time tendered [for shipment] determines its status for rate purposes, and the use which may be subsequently made of the material does not control the question whether the shipment has a recognized commercial value."

See also Crancer v. Lowden, 8 Cir., 1941, 121 F.2d 645, 649, affirmed on other grounds, 1952, 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077; Larrimore Inc. v. Union Pac. R. Co., 273 I.C.C. 415; Lapides Metals Co. v. B. & M. R. R. Co., 278 I.C.C. 214.

■ This principle seems particularly appropriate in this case. It appears from the stipulation of facts that the plaintiff's experience in the past has been that approximately 10% of the automotive parts shipped is reconditioned and that eventually 90% is sold for scrap. Plaintiff has no records with which to corroborate these percentages. It also appears from the stipulation of facts that the ultimate use by the plaintiff of the vehicle parts, whether for reconditioning or scrap, depends not entirely upon the physical condition of the parts, but also upon such unpredictable factors as the condition of the markets for scrap and automotive parts, the demand for particular parts, the cost of reconditioning, storage space, stock on hand of particular parts, and the sufficiency of reserve capital. None of these factors, save the physical condition of the parts, can be determined at the time of shipment, and it is self evident that classification of materials for rate purposes cannot depend upon events which occur after shipment and which may occur in varying degrees. Hence, the inquiry must be directed to the nature and condition of the automotive parts purchased by plaintiff from the United States Army at the time these parts were tendered for shipment. Sonken-Galamba Corp. v. Union Pac. R. Co., supra; Atchison Leather Products Company v. A., T. & S. F. R. Co., 274 I.C.C. 328; Reliable Jobbers & Shoe Co., Inc. v. A., T. & S. F. R. Co, 284 I.C.C. 72.

The rate-making and regulatory body has by apt and revealing words defined "scrap iron" as used in its prescribed tariff as that class of metal which has value for remelting purposes only,[3] and it has amplified that definition by describing "scrap iron" as consisting of

---

1. Consolidated Freight Classification Number 20, Item 2815.

2. Consolidated Freight Classification Number 20, Items 25455 and 25456.

3. Consolidated Freight Classification Number 20, Items 25455 and 25456.

"old, worn out, obsolete, broken and cut iron, or dismantled machinery, and parts thereof, entirely unfit for original use and having no commercial value except for remelting purposes." Klotz Bros. v. Chesapeake & Ohio, 177 I.C.C. 557. See also United States ex rel. Sonken-Galamba Corp. v. Missouri-Kansas-Texas R. Co., D.C., 21 F.Supp. 931, affirmed Atchison, T. & S. F. R. Co. v. United States ex rel. Sonken-Galamba Corp., 8 Cir., 1938, 98 F.2d 457; Vol. 38, Words and Phrases, Scrap Iron and Scrap Steel, p. 364.

The Interstate Commerce Commission stated in H. P. Randall Mfg. Co. v. Alton & S. R., 269 I.C.C. 655, 657:

"The Commission has found in numerous proceedings that where a commodity has a utility in its original form it cannot be considered scrap."

■ The parties have stipulated that "substantial amounts of parts have the physical capacity to be reconditioned" and that "all of the units in said shipments maintain their original identity at the time of shipment." There is no indication that any considerable amount of the vehicle parts were broken down, cut or dismantled; the Court is, in fact, lead to the opposite conclusion that most, if not all, of the parts shipped, were whole and complete, and that a substantial amount of the parts had utility in their present form. Since substantial amounts of the automotive parts have the physical capacity to be reconditioned, and since the rate is determined from the inherent character of the article and is unaffected by the use to which put, it follows that substantial amounts of the automotive parts have economic value for purposes other than remelting and cannot be considered as scrap iron or steel.

■ Plaintiff has argued that regular scrap iron and steel dealers also purchased from the United States Army the same type of material that plaintiff purchased, and, it is contended, the rate for scrap iron or steel would be applicable to shipments tendered by these dealers. Plaintiff then argues that the nature of the material shipped by the scrap dealers and by plaintiff is identical and, therefore, the rate should be identical. However, it is apparent that, just as the future use to which an article may be put has no bearing upon its inherent character for rate purposes, the nature of the business of the shipper likewise can have no bearing on the status of the material for rate purposes. In Lapides Metals Co. v. B. & M. R. R. Co., 478 I.C.C. 214, the scrap rate was held inapplicable to a shipment of aluminum airplane cylinder heads which were purchased from the War Assets Administration as surplus scrap by the shipper who was in the scrap iron and steel business exclusively, and who actually remelted the cylinder heads to recover the aluminum content. The rate for airplane cylinder parts was held applicable:

"The commodity comprising the shipment was manufactured for and bought by the Armed Forces for use as airplane aluminum heads. There is no evidence that cessation of hostilities converted them into something different." 278 I.C.C. at page 215.

■ Plaintiff's assumption that the scrap iron and steel dealers who purchased automotive parts of the type that plaintiff purchased would be charged the scrap iron rate is not well founded. Furthermore, the parties have not set out in their stipulation of facts any indication that the scrap iron and steel dealers would be charged the lower rate, and this assumed fact cannot be taken into consideration in passing on this motion for summary judgment.

Plaintiff has suggested that the facts and holding of Sonken-Galamba Corp. v. Union Pac. R. Co., 10 Cir., 1944, 145 F. 2d 808, are closely analogous to the situation presented here. In that case it was held that the scrap iron rate was applicable to shipments of dismantled oil tank bottoms which were pitted and rusted. The facts of that case are distinguishable from those here. In that

case the materials shipped were sections of broken down oil tanks which were in bad condition when shipped. In this case, the automotive parts were whole and complete, and, although it would be economically impracticable to recondition many of the parts, the decision to recondition or not rests upon consideration of not only the physical condition of the parts, but upon many other factors such as the relation of the scrap market to the automotive parts market, which factors are of course immaterial in determining the status of the parts for rate purposes. Conceivably a particular part could be in very poor condition, but, because of a low scrap market and a favorable parts market, or because of a heavy demand for that particular kind of part, plaintiff could decide to recondition the part rather than scrap it.

Plaintiff has also contended that at least a portion of the parts shipped were scrap under any definition and that plaintiff, at the least, should be entitled to recover the difference between the rate paid on this portion and the lower applicable scrap rate. Even assuming that some of the parts were scrap under any definition, although the Court does not now pass upon this question, it does not appear that a court or jury could determine what amount was scrap without entering into the realm of speculation and conjecture. Plaintiff has admitted in the stipulation of facts that "plaintiff has no records to establish with accuracy the quantity of each shipment which has been sold for scrap or which has been reconditioned and sold as automotive parts. The balance of such shipments on hand in plaintiff's storage yard is being kept by plaintiff awaiting future decision as to what shall be scrapped and what shall be reconditioned and sold." It appears that there is no separation of parts at the time of shipment, and that upon arrival in Minneapolis, some of the parts are immediately scrapped, but substantial amounts are stored to be disposed of later. The failure of plaintiff to keep records as to the disposition of the parts makes it impossible to determine with any accuracy how many of the parts were actually scrap, even assuming that such records would be competent to show the nature and character of the automotive parts at the time of shipment.

It is concluded, as a matter of law, that the tariff classification for scrap iron and steel is inapplicable to the automotive parts shipped by plaintiff.

Defendant's motion for summary judgment is granted.