**CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY**

v.

**DUHAMEL BROADCASTING COMPANY.**

**No. Civ. 69–133W.**

United States District Court, D. South Dakota, W. D.

Jan. 25, 1972.

Harold Hanley, Rapid City, S. D., for plaintiff.

George Beal, Rapid City, S. D., for defendant.

## MEMORANDUM DECISION

BOGUE, District Judge.

Defendant Duhamel Broadcasting Enterprises purchased dismantled tower material through a television trade journal. The tower material was to be used in the construction of a five-hundred foot (500') steel tower to transmit television signals.

The defendant's engineers requested a quote from the Rock Island Railroad, not the plaintiff railroad, but a connecting carrier, for the cost of transporting such used tower material from the dismantled tower from Houston, Texas, to Lead-Deadwood, South Dakota. A written quote dated August 6, 1966, was received from the Rock Island Lines by Don E. Hamblin, Freight Sales Representative, quoting a price of $1.33 per hundred weight for a shipment of a minimum of eighty thousand pounds (80,000 lbs.). Exhibit "2" is a copy of the Rock Island quote and such other pertinent loading and route shipment information. The used tower material from the completely dismantled tower was then transported from its location to the railroad siding near Houston, Texas, and loaded on two gondola rail-road cars by Westheimer Rigging of Houston, Texas, at defendant's request and expense.

The shipment of the used tower material weighed one hundred sixty-one thousand, seven hundred sixty pounds (161,760 lbs.). Said shipment was tendered and delivered to Fort Worth and Denver Railway Company at Houston, Texas, on or about September 9, 1966, and accepted and transported over the lines of that carrier and its connecting carriers, including the plaintiff railroad, and transported to Lead-Deadwood, South Dakota, and delivered to the defendant on or about September 21, 1966.

The plaintiff's position is that the rate contended to be applicable by the plaintiff railroad is the rate based on the classification contained in Uniform Freight Classification No. 7, page 759, Item 92005, entitled "Towers, Aerial, or Antenna Radio or Television Receiving, Steel, Sections, Nested or Telescoped, Loose or in Packages," and not the $1.33 rate given by Rock Island Railroad. Plaintiff seeks the rate of $2.08 per hundred, plaintiff contends that class rates between points in South Dakota are covered by Southwestern Lines Tariff SW/W 1006–A. Under National Rate Basis Tariff 1–A, page 348, Lead, South Dakota, takes the rate applicable to Deadwood, South Dakota. On page 338 of Tariff SW/W 1006–A, the rate base applicable between Houston and Deadwood is 1384. On page 434 for Class 35, where the rate base is 1384, the rate is $2.08, the rate sought by the plaintiff.

The only question presented before this Court is which rate is applicable to the particular shipment, to-wit: The $2.08 per hundred rate contended by the plaintiff or the $1.33 rate contended for by the defendant. It is undisputed that the defendant has paid the full amount of the shipping charge if the $1.33 rate is applicable, which aggregates to $2,150.40.

▆▆▆ The plaintiff's claim of an increased rate is spurious. The fact is

that the equipment shipped was not a tower per se, but rather dismantled tower material. The important factor is what was in fact shipped by plaintiff railroad. The fact that the defendant intended to subsequently use this loose salvaged steel to redesign and reconstruct a television tower is immaterial. The nature of the shipment at the time tendered determines the status for rate purposes. Sonken-Galamba Corporation v. Union Pacific R. Co., 145 F.2d 808 (10th Cir.1944), Denver & R. G. W. R. Co. v. Resurrection Min. Co., 139 F. Supp. 564 (D.C.1956). The railroad shipped loose salvaged steel, and protected it as nothing more, and is now attempting to charge a rate based on equipment of a technical nature which would have required proper packing and protection. This was not the case as the steel was laying loosely in the freight cars.

This fact situation is to be governed by the ordinary rules of common sense, and the use of such common sense leads this Court to the inescapable conclusion that the railroad shipped nothing more than loose steel. A substantial portion of the parts that go to make up a radio or television tower were absent from the "used tower material" purchased by defendant. These were such things as the nuts and bolts and other fastening devices used to assemble the steel vertical lengths and supporting cross bars. The salvage material had no anchor material, connecting bolts and guys for the anchors. These items were purchased separately by defendant. Additionally, redrilling and cutting of the loose steel was necessary in the construction of the television tower. Therefore, the applicable rate is the said $1.33. This Court is not addressing itself to defendant's counterclaim as it now becomes moot. Defendant is entitled to recover its reasonable attorney's fees and costs to be taxed pursuant to statute.

The foregoing Memorandum Opinion shall constitute this Court's findings of fact and conclusions of law.