**NASHVILLE, C. & ST. L. RY. et al. v. BREMAN.**

Civil Action No. 2782.

District Court, N. D. Georgia, Atlanta Division.

May 31, 1947.

Tye, Thomson, Tye & Edmondson, of Atlanta, Ga., for plaintiffs.

J. Kurt Holland, of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

The above case came on for final hearing, evidence was introduced and argument of counsel heard.

In the suit, plaintiffs seek to recover for alleged undercharges on seven carloads of material transported from Jeffersonville, Indiana, to defendant at Atlanta, Georgia. Plaintiffs allege that the undercharges arose out of the collection of freight charges based on rate applicable to scrap iron, when the higher freight rate applicable to bolts and nuts should have been collected.

The description of the contents of one of the cars, Pennsylvania Railroad car Number 104,232, was "Tire Bolts." The contents of the other six cars were designated as "Scrap iron Bolts."

Defendant purchased from the War Department of the United States at Jeffersonville, "Salvage—Bolts and Nuts—Unserviceable," at approximately $31.96 per ton. These bolts and nuts were originally purchased by the Government for use during World War One in fastening iron tires to wooden wheels of heavy artillery. They were packed in cardboard cartons which were in turn packed in wooden boxes. Upon arrival in Atlanta, the material was inspected by the Southern Weighing & Inspection Bureau by opening eight or ten wooden boxes in the different cars and by examining some that were loose in the cars. The classification in the original bills of lading was changed from "Tire Bolts" and "Scrap iron Bolts" to "Iron Bolts and Nuts" and charges assessed accordingly. Representatives of the Bureau estimated that from ten to twenty per cent

of the material was rusty and not usable as bolts, but that the remainder was suitable for original use. No evidence was adduced to show in what cars the alleged usable bolts were shipped or what cars contained the bolts admittedly unsuitable for original use.

Defendant sought to dispose of the material by advertising and personal efforts to sell in its existing state as bolts and also to have it reworked so as to be converted into marketable bolts, but without success. The bolts were finally removed from the containers, dumped into a mass and shipped as loose scrap to foundries for remelting, all efforts to make them usable for other purposes having failed. Defendant testified that he eventually saw all of the material as it was loaded loose in freight cars for shipment as scrap to the purchasers thereof for melting, that approximately fifty per cent of the bolts were rusty and unfit for use, and that the remaining fifty per cent, because of obsolescence, was likewise unfit for use except for remelting. None of the material was or could be sold by defendant for use in its original state. It was purchased and shipped by him and accepted by the carrier as scrap iron, disposed of as such at scrap iron prices and actually remelted by the purchasers thereof for conversion after melting into other type products.

The question for determination in this case is whether the material contained in these shipments comes within the tariff description of scrap iron.

The tariff provides a rate upon:

"Iron or steel, scrap or pieces, not copper clad." (See Note 1 Below.)

Note 1 below provides:

"Note 1. Rates apply only on scrap or pieces of iron and steel having value for remelting purposes only."

The Interstate Commerce Commission, by decision, amplified the description in the following language, "Scrap iron consists of old, worn out, obsolete, broken and cut iron or dismantled machinery, and parts thereof, entirely unfit for original use, and having no commercial value except for remelting purposes." Klotz Bros. v. C. & O. Ry. Co., 177 I.C.C. 557.

The evidence clearly shows that a portion of the material, perhaps one-half, comes within any definition of "scrap iron" and that the balance also comes within such definition if reasonable interpretation is given the words "obsolete" and "having no commercial value except for remelting purposes." In spite of defendant's strenuous efforts to find a use for the material other than for remelting purposes, none could be disposed of for any other purpose, both because of the unfit condition of part thereof, and because of the obsolescence of the balance.

In the light of the evidence in this case, it seems that any classification of any of the material other than as scrap iron would be highly technical and arbitrary.

As pointed out by the Circuit Court of Appeals of the Eighth Circuit in Atchison, T. & S. F. Ry. Co. v. United States ex rel. Sonken-Galamba, Corporation, 98 F.2d 457, the Weighing and Inspection Bureaus are highly technical in their definitions and that they make their classifications regardless of whether it would be practicable or impracticable to use the material for any other purpose than remelting and regardless of how much or how little or whether there is any demand therefor for any other purpose.

Plaintiffs contend, with respect to the bolts other than those unfit for use because of rust, that the material should bear a higher classification because it was suitable for its original use, although, on account of obsolescence, such original use will never again be practicable. Such interpretation of the word "obsolescence" and the definition of "scrap iron" in which it appears, seems not only highly technical but arbitrary and unjust. There is no practical difference between articles unfit because of rust for use other than remelting and articles unfit because there is no other use that they could possibly be put to on account of obsolescence. In the commercial and business realm, practical rather than fanciful definitions of terms should be adopted.

"Where the tariff provision does not depend for its meaning upon the solution of some peculiar question of fact; where the

reasonableness of the provisions is not in issue; where the Commission has concededly promulgated a rate which must be applied; and where the only question is whether or not the commodity in question is the commodity referred to in the rate, then there is presented a factual question in no wise differing from any other fact issue determinable by courts and juries." Texas & Pacific Ry. Co. v. Sonken-Galamba Corporation, 5 Cir., 100 F.2d 158, 159.

Plaintiffs are undertaking to recover for alleged undercharges, so that the burden is upon them to prove all the facts necessary to make out a case for such recovery.

I find, therefore, that the material in question was properly classified as scrap iron and that freight rates based on such classification were proper and that no undercharges on account of the shipments have been proved.

Upon consideration of all the evidence, I find that the material in question was properly classified as scrap iron and the correct freight charges collected.

Judgment will be entered in favor of the defendant based upon these findings. Let judgment in accordance herewith be prepared and promptly submitted to the Court.