**READING COMPANY**

v.

**PENN PAPER AND STOCK CO., a partnership, and Penn Paper and Stock Co., Inc., a corporation.**

**Civ. A. No. 10343.**

United States District Court
E. D. Pennsylvania.

Aug. 22, 1955.

White, Williams & Scott, John J. Dautrich, Alfred W. Hesse, Jr., Philadelphia, Pa., for plaintiff.

Harry J. Alker, Jr., Philadelphia, Pa., for defendant.

LORD, District Judge.

Plaintiff seeks to recover from defendant the sum of $7,273.32, which represents the balance of freight charges and transportation tax on a shipment of thirteen carloads of a paper commodity consigned by defendant to itself from points on the lines of the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company to destinations on the line of the plaintiff, Reading Company. The shipment all moved interstate.

The question to be determined is whether the freight rate applicable to the shipment should be as "waste paper" (which charges were paid by the defendant), or as "spitting cups" claimed by the plaintiff, the difference being the amount in controversy. At the trial, the following undisputed facts were developed.

Defendant has been solely engaged in the waste paper business for a long period of time. The material was purchased by defendant per sample from a broker dealing in waste products who in turn had purchased it from the United States as war surplus. It was bought as waste paper and the price paid was similar to waste paper of the same grade. Defendant would not have made the purchase if it had known that any rate other than that of waste paper was applicable, since the margin of profit on the transaction was very small.

Bills of lading were prepared by defendant and forwarded to the freight agent of the Louisville & Nashville Railroad Company describing the shipment as "machine pressed bales waste paper". Without notifying defendant, the agent for the railroad at origin, the Weighing

and Inspection Bureau, changed the description to "cups paper spitting nested" and freight charges were assessed by the plaintiff as such.

The material consisted of a flat waxed cardboard form, delineated for folding into a cup. It was manufactured for the United States for use in hospitals during the war as a spitting or sputum cup. An inspection at destination showed that the cups had become discolored with age and there was a deterioration of the wax coating resulting in a rancid odor. It was testified that the cups were not in proper sanitary condition to be used for anything but waste paper. Defendant was unsuccessful in an attempt to process the material and remove the wax coating. The contents of a number of the cars were consigned to a railroad dump when the freight rates charged were for waste paper. The remainder of the cars were sold to another waste paper user.

Plaintiff commenced the present action on November 25, 1949. Defendant filed a complaint with the Interstate Commerce Commission seeking a finding against the railroads' handling the shipments that the rates as "spitting cups" were unreasonable. The Commission dismissed the complaint.

The first question presented is whether this Court has jurisdiction to determine if the commodity shipped should be classified as waste paper or spitting cups, or is this a matter exclusively for determination by the Commission? The Interstate Commerce Act, 49 U.S.C.A. § 9, provides for alternative remedies. The plaintiff, in its complaint averred this Court had jurisdiction by reason of Section 1337 of the Judicial Code, 28 U.S.C.A., which provides as follows:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

It was early held that the Commission has the exclusive power to determine that a rate contained in a lawfully filed and published tariff is reasonable. Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 1906, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. However, the real question in this case is not whether the tariff is reasonable, but rather a question of construction, there being no dispute as to the facts, as to which of two tariffs is applicable—the one for waste or the one for spitting cups.

In Great Northern R. Co. v. Merchants' Elevator Co., 1922, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943, Mr. Justice Brandeis delineated the jurisdiction of the Commission and of the courts in the construction of tariffs. In holding that the court had jurisdiction in that case he said, 259 U.S. at page 294, 42 S.Ct. at page 480:

"* * * Here no fact, evidential or ultimate, is in controversy, and there is no occasion for the exercise of administrative discretion. The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the Commission was, therefore, unnecessary."

This case was quoted as authority in Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 10 Cir., 1951, 193 F.2d 441, 443. In the latter case the question was whether the railroad company was entitled to recover additional charges for a shipment of portable heating units under a tariff description reading " 'Machinery or Machines, or Parts Named: * * * Air cleaners, coolers, heaters, humidifiers or washers and blowers or fans combined' " as against a tariff description claimed by the defendant to be applicable which read: " 'Boilers, Furnaces, Radiators, Stoves, Related Articles or Parts Named: Gas, gasoline or oil, noibn, including gas radiators, noibn, * * * in barrels, boxes or crates.' " The court held that it had jurisdiction saying, at page 444:

"If the question is which of two rates apply, and there is no contest about the reasonableness of either rate, and the tariffs contain no technical words or phrases employed in a peculiar meaning, the question is not primarily one for the Interstate Commerce Commission, but is a judicial question of which the courts have jurisdiction in the first instance."

In accord, Murray Co. v. Gulf, C. & S. F. Ry. Co., D.C.N.D.Tex.1945, 59 F.Supp. 366, where the court determined the tariff applicable on rates for shipments of " 'twisted or coiled' " steel bars as distinguished from "bomb bodies" or " 'bomb body parts' "; and Pennsylvania R. Co. v. Fox & London, Inc., 2 Cir., 1938, 93 F.2d 669, where the court determined whether shipments were " 'white metal alloy, scrap' " or "aluminum scrap" saying, at page 670:

" * * * And, moreover, where the terms of the published tariff are themselves unambiguous, the issue must be resolved by reference to the rate published, treating it as established law like any plain statute, leaving only the incidental issue of applicability which is dependent only upon the fact of the nature of the commodity shipped. Properly speaking, no construction of a tariff is involved where the only controversy is whether the commodity shipped is one or another of two things plainly classified. * * * "

The evidence in this case shows two tariff descriptions, each of which is clear: one is of waste paper and the other is of spitting cups. The only issue is whether the commodity at the time of shipment should be classified as waste paper or spitting cups. It would appear, under the foregoing cases, that this Court has jurisdiction to determine which description applies.

The next question presented is whether the action of the Interstate Commerce Commission is conclusive of the issue now before the court. The present suit was commenced before a complaint was filed with the Commission. The complaint merely alleged that the rates sought to be collected were unjust and unreasonable. There was no hearing before the Commission to establish the nature of the shipment. The Commission dismissed the complaint merely holding that the spitting cup rates were reasonable and not unjust (283 I.C.C. 355) and that the complaint did not " * * * allege that the fourth-class rating (the rating applicable on shipments of spitting cups) is unreasonable for application on paper spitting cups *nor that it is not applicable * * * *"*. (Emphasis supplied.)

The question of applicability of the rates was not before the Commission. There is no dispute as to the facts, no question as to the exercise of administrative discretion, but merely one of construction as to which rates applied to this particular shipment. Under such circumstances it has been held that this Court can decide the issue. W. P. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 6 Cir., 1936, 82 F.2d 94; Louisville & N. R. Co. v. United States, D.C.W. D.Ky.1952, 106 F.Supp. 999; American Ry. Express Co. v. Price Bros., 5 Cir., 1931, 54 F.2d 67.

We now come to the final question— Which rates were applicable? From the facts heretofore set out in full, there is *no dispute that the shipment was bought as waste paper at waste paper rates* by the defendant engaged solely in the waste paper business. The portion usable at all was used as waste paper. The cups were not "nested" as described in the tariff but shipped flat. Obviously much more material could be carried in a freight car when "baled" rather than "nested" and for that reason higher rates were chargeable for nested shipments. In Atchison, T. & S. F. Ry. Co. v. United States ex rel. Sonken-Galamba Corp., 8 Cir., 1938, 98 F.2d 457, the question was whether the material should be shipped as scrap iron and steel or at a higher rate as second hand iron and steel plates. It had no commercial value except for remelting purposes. The lower

court held that the rate for scrap iron applied and the Circuit Court affirmed that action.

The case of Nashville, C. & St. L. Ry. v. Breman, D.C.N.D.Ga.1947, 75 F.Supp. 539, is very similar to the case in issue. The question was whether the rates pertaining to scrap iron, or the higher rates applicable to bolts and nuts, should apply. There, as here, the shipper paid the lower rate and the railroad sued for the difference. The Weighing and Inspection Bureau, after an inspection, changed the bills of lading to the higher classification, although none of the material could be used in its original state. The court held the lower classification of the shipper was proper and gave judgment for the defendant saying, at page 540:

"As pointed out by the Circuit Court of Appeals of the Eighth Circuit in Atchison, T. & S. F. Ry. Co. v. United States ex rel. Sonken-Galamba Corp., 98 F.2d 457, the Weighing and Inspection Bureaus are highly technical in their definitions and that they make their classifications regardless of whether it would be practicable or impracticable to use the material for any other purpose than remelting and regardless of how much or how little or whether there is any demand therefor for any other purpose."

In support of its view, the plaintiff cites Sonken-Galamba Corporation v. Union Pac. R. Co., 10 Cir., 1944, 145 F.2d 808, where the court reviewed a number of cases dealing with the problem of whether particular metals tendered for shipment were or were not scrap iron, holding that the use which may be subsequently made of the material does not control the question. But, even so, in reversing the lower court which gave judgment for the railroad company, the court held that the lower rates for scrap were applicable, concluding, at page 813: "* * * it is clear from the evidence that predominantly the only value attributable to these tank bottoms was for remelting purposes only * * *." Furthermore, in many cases cited by the

court in its opinion the material could be used for its original purpose. That is not our case.

This Court is of the opinion that the present shipment was not spitting cups as manufactured, but that the material had deteriorated to a point where it should have been classified as waste paper. The lower rates were applicable, and having been paid by the defendant, judgment will be entered in its favor.

The foregoing findings of fact and conclusions of law embodied in this opinion may be taken as the Findings of Fact and Conclusions of Law of the Court.

An appropriate order will be submitted.